**SIGNED THIS: May 18, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 10-72313 |
| TODD ST. PIERRE and | ) | |
| MICHELLE ST. PIERRE, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## O P I N I O N

 Before the Court is the Chapter 13 Trustee's Motion to Dismiss. One of the Debtors' secured creditors filed an amended proof of claim for a deficiency amount due on a vehicle which the creditor repossessed and sold. The Trustee argues that the Debtors' confirmed Third Amended Plan bound the Debtors to pay unsecured creditors in full and that, with the filing of the amended proof of claim, there are insufficient funds now being paid to the Trustee by the Debtors to achieve that result. Accordingly, the Trustee asserts that completion of the terms of the Third Amended Plan is no longer feasible and the case should be dismissed. Because the Court finds that the Trustee has

-1-

mischaracterized the terms of the Third Amended Plan, the Trustee's Motion to Dismiss will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Todd St. Pierre and Michelle St. Pierre ("Debtors") filed their voluntary Chapter 7 bankruptcy petition on July 26, 2010. The Debtors subsequently moved to convert their case to Chapter 13 after the United States Trustee filed a motion to dismiss the case as an abuse of Chapter 7. The Debtors' Motion to Convert to Chapter 13 was allowed on March 8, 2011.

The Debtors' Third Amended Plan was confirmed on December 5, 2011. The Trustee had objected to the Debtors' previously-filed Amended Plan and the Second Amended Plan primarily on the basis that the Debtors were not committing all of their disposable income to plan payments. Specifically, the Trustee disputed certain expense deductions in the Debtors' disposable income calculation. Under both the Amended Plan and the Second Amended Plan, the Debtors proposed to pay to the Trustee a total of $6300 plus their state and federal income tax refunds received during the life of the plan. Under these earlier proposed plans, approximately $2000 would have been available for unsecured creditors. The Trustee asserted in his objection to the Second Amended Plan that the Debtors' disposable income was such that Debtors should pay a total of $7464.90 rather than $6300. According to the Trustee, such amount would be sufficient to pay general unsecured creditors in full.

In their Third Amended Plan, the Debtors accepted the Trustee's calculation and actually agreed to pay a slightly higher total of $7625 plus any income tax refunds received during the term of their plan. The Third Amended Plan provided that the Debtors would make payments directly to State Bank of Cerro Gordo for mortgage payments and to Wells Fargo for a secured car loan on a 2004 Chevrolet Trailblazer ("Trailblazer"). After payment of Debtors' attorney fees and the

Trustee's fees, Debtors stated that they expected $4369.62 to be available for distribution to general unsecured creditors. The Third Amended Plan also said the "anticipated dividend to unsecured creditors would be 100%." The Trustee did not object to confirmation of the Third Amended Plan.

After the Third Amended Plan was confirmed, the Debtors moved to borrow money to buy a new car. In their Motion to Borrow, Debtors acknowledged that they were in default on a previously-entered order conditioning the automatic stay as to Wells Fargo and, accordingly, they expected Wells Fargo to repossess the Trailblazer. The Motion to Borrow stated that the Debtors might attempt to modify the Third Amended Plan to allow Wells Fargo to amend its proof of claim in the event of a deficiency after liquidation of the Trailblazer. The Court granted the Motion to Borrow on January 4, 2012. The Order allowed only the requested authority to borrow on a secured basis and contained nothing about Wells Fargo's anticipated repossession of the Trailblazer or potential amended claim.

Apparently, there was a deficiency after Wells Fargo sold the Trailblazer, as Wells Fargo has amended its proof of claim.[1] In response, the Trustee has moved to dismiss the Debtors' case because, in the Trustee's view, the Third Amended Plan promised a 100% dividend to unsecured creditors which now cannot occur if Wells Fargo's claim is paid as unsecured. The Trustee also complains that the Third Amended Plan did not provide for surrender of the Trailblazer or payment of Wells Fargo as an unsecured creditor and, despite the Debtors' representations when they sought

---

[1] Wells Fargo filed its initial secured claim in the amount of $9201.57 on March 24, 2011, after the case was converted from Chapter 7. The Chapter 13 claims bar date for non-governmental creditors was August 10, 2011. Although initially filed as fully secured, the claim was timely filed to the extent necessary to preserve an unsecured claim. *See* Fed. R. Bankr. P. 3002(a), (c). Wells Fargo filed two amended unsecured claims on February 8, 2012, and a third amended unsecured claim on February 10, 2012. All of the amended unsecured claims are in the amount of $6057.73 but only the third and final version contains any details of the liquidation of the Trailblazer. Even that claim, however, fails to include a calculation establishing how the new claim amount was determined. The final amended claim says that the Trailblazer was sold for $4500 and that no interest, fees, or costs have been added into the claim. Mathematically, it simply does not all add up.

authority to borrow, no motion to modify has been filed. The Debtors objected to the Trustee's Motion to Dismiss, claiming that they had agreed in their Third Amended Plan on a dollar amount — not a fixed percentage — to be paid to unsecured creditors. The parties argued the merits of their respective positions on April 12, 2012. The matter is now ready for decision.

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334. This is a core proceeding. *See* 28 U.S.C. §157(b)(2)(A), (O).

## LEGAL ANALYSIS

The issue argued by the parties is whether the Debtors' Third Amended Plan contained a guarantee to pay all claims in full or, alternatively, simply committed a specific dollar amount to be paid. These arguments raise the legal issue of whether the Third Amended Plan was confirmed under subsection (A) or (B) of §1325(b)(1), which provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1).

Section 1325(b)(1) is structured in the disjunctive. When a trustee or unsecured creditor objects to plan confirmation, a debtor must either pay "such claim" in full or commit to paying all

−4−

of his "projected disposable income" to unsecured creditors over the duration of the plan. *See* 11 U.S.C. §1325(b)(1); *Pellegrino v. Boyajian* (*In re Pellegrino*), 423 B.R. 586, 591 (B.A.P. 1st Cir. 2010); *In re Barrett*, 371 B.R. 860, 862 (Bankr. S.D. Ill. 2007). A debtor need not do both.

The relevant language in the Third Amended Plan says, "From the payments received by the Trustee, after payment of priority claims and secured claims, the Trustee should have available approximately $4,369.62 which will be paid pro-rata to unsecured claims. The anticipated dividend to unsecured creditors would be 100%." On its face, the Third Amended Plan does not expressly state whether it is proposed to satisfy subsection (A) or (B). The context, however, clearly shows that the Debtors' Third Amended Plan was confirmed under subsection (B).

The Third Amended Plan was the result of a compromise between the Debtors and the Trustee about the dollar amount to be paid to fund the Third Amended Plan. The Trustee had objected to the Debtors' Amended Plan and Second Amended Plan on the grounds that the Debtors were not proposing to pay all of their "projected disposable income" into either of those plans. In his objection to the Second Amended Plan, the Trustee asserted that the Debtors should pay a total of $7464.90 to fund the plan, not the $6300 which the Debtors were proposing. The Third Amended Plan reflects that the Debtors accepted the Trustee's calculations which, over the 60-month term of the plan, resulted in only about a $25-per-month increase in plan payments. Nothing in the Third Amended Plan reflects an admission or agreement by the Debtors that they were obligating themselves to pay all potential unsecured claims in full regardless of what claims might be filed.

The concept of "disposable income" was introduced into the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984. *In re Smith,* 848 F.2d 813, 819-20 (7th Cir. 1988). The disposable income provisions of the new §1325(b) replaced the old "totality of

circumstances" test used for determining the appropriate amount of Chapter 13 plan payments and made clear that no specific percentage amount was required to meet the "good faith" requirements for plan confirmation. *Id.* at 820-21. Since that time, the law in the Seventh Circuit has reflected an overwhelming preference for "pot plans," not "percentage plans." *In re Witkowski*, 16 F.3d 739, 746 n.11 (7th Cir. 1994); *see also In re Burrell*, 2009 WL 1851104, at *4 (Bankr. C.D. Ill. June 29, 2009); *In re Caruso*, 2001 WL 34076052, at *2 (Bankr. C.D. Ill. July 16, 2001); *In re McNichols*, 249 B.R. 160, 174 (Bankr. N.D. Ill. 2000). Further, the Seventh Circuit has cautioned that continued use of percentage plans may run afoul of the "good faith" and "disposable income" requirements for plan confirmation. *Witkowski*, 16 F.3d at 746 n.11. Based on such longstanding precedent, it is clear that the language setting the dollar amounts in the Third Amended Plan creates the required "pot plan" and the language about the anticipated percentage dividends is unnecessary and surplusage.

The only commitment the Debtors made in their Third Amended Plan was to pay all their "projected disposable income" pursuant to subsection (B). The Third Amended Plan thus was confirmed under subsection (B). Under current law, the calculation of disposable income always results in the determination of a dollar amount available to pay unsecured creditors. 11 U.S.C. §1325(b)(2). Thus, disposable income should be stated in a dollar amount and, accordingly, the dollar amount stated in the Third Amended Plan must control.

A second issue, not argued by the parties but nevertheless important, is whether the filing of the amended unsecured claim by Wells Fargo actually entitles Wells Fargo to share in the "pot" of funds available for unsecured creditors under the Third Amended Plan. Both the Trustee and the Debtors' attorney seem to be under the assumption that the filing of the amended unsecured claim by Wells Fargo results in the Trustee having to pay that claim. Case law does not support that

assumption.

Generally, a confirmed Chapter 13 plan is binding on a debtor and all creditors. 11 U.S.C. §1327(a); *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000). Here, as the Trustee correctly points out, the proposed treatment for Wells Fargo in the Third Amended Plan was that its claim would be paid as fully secured directly by the Debtors and not from the funds passing through the Trustee. No motion to modify that treatment has ever been filed by any party.

Wells Fargo obtained relief from stay based on a consent order entered early in the case which required the Debtors to make certain payments in order to keep the Trailblazer and the protection of the automatic stay. That order did not purport to modify the terms of the Third Amended Plan and the granting of stay relief does not, in and of itself, result in a modification of plan terms. *See Bryant v. Tidewater Fin. Co. (In re Bryant)*, 430 B.R. 516, 522 (Bankr. C.D. Ill. 2010). Likewise, the filing of an amended unsecured claim by Wells Fargo does not, in and of itself, modify the terms of the confirmed Third Amended Plan. Without prejudice to the rights of Wells Fargo, the Trustee, or the Debtors to seek further relief from this Court, this Court must find at this time that, absent plan modification, the treatment of Wells Fargo as set forth in the Third Amended Plan controls and continues to bind the Debtors and Wells Fargo.[2]

---

[2] Plan modifications are limited to the circumstances set forth in §1329(a). 11 U.S.C. §1329(a); *Witkowski*, 16 F.3d at 745. Motions to modify confirmed plans to surrender property and change the status of a secured creditor to an unsecured creditor have not always been favorably received because such modifications may not be of the type contemplated by §1329. *See, e.g., In re Arguin*, 345 B.R. 876, 881-82 (Bankr. N.D. Ill. 2006); *In re Smith*, 259 B.R. 323, 327 (Bankr. S.D. Ill. 2001); *but see Bank One v. Leuellen*, 322 B.R. 648, 653 (S.D. Ind. 2005). Accordingly, although the Court's comments might be construed as suggesting that a motion to modify is needed here, nothing contained herein should be construed as suggesting that any such motion to modify will be successful.

**CONCLUSION**

The Trustee's Motion to Dismiss must be denied. The Debtors' Third Amended Plan was confirmed under §1325(b)(1)(B), and the dollar amounts set forth therein did not result in the Debtors making a commitment to pay all unsecured creditors in full regardless of the amount of claims filed. Further, the Trustee's concerns about the impact of the Wells Fargo amended claim on distributions to unsecured creditors are raised prematurely as the Third Amended Plan has not been amended to provide for the payment of the amended claim.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###